IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01305-CYC

STEPHEN FINK,

     Plaintiff,

v.

THE CITY AND COUNTY OF DENVER,

     Defendant.

---

## ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Defendant The City and County of Denver moves to exclude expert testimony provided by Natasha Powers and Dr. Edward R. Maguire pursuant to Fed. R. Evid. 702. ECF No. 107. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

According to the Third Amended Complaint, on May 25, 2020, George Floyd was killed by Minneapolis police officers. ECF No. 92 ¶ 17. Three days later, individuals across the nation began protesting. *Id.* ¶¶ 18–19. The plaintiff, Stephen Fink, was one of those protestors, attending protests in Denver, Colorado from May 28 to May 30, 2025. *Id.* ¶ 19.

On May 30, 2025, during one of those protests, a police officer threw a gas canister that landed near the plaintiff. *Id.* ¶ 26. The plaintiff then attempted to kick the canister away but, before reaching it, heard a thump and immediately felt intense pain in his groin that knocked him down, the result of an officer firing a 40 mm projectile at him. *Id.* ¶¶ 26–27, 33.

The plaintiff then commenced this action. The original complaint asserted five claims against the defendant, City of Aurora, and Does 1–20. ECF No. 1 ¶¶ 128–89. The parties

consented to the jurisdiction of a magistrate judge. ECF No. 25. The plaintiff twice amended his complaint, ECF Nos. 21, 60, and the Court granted a motion to dismiss the Second Amended Complaint in part. ECF No. 78. The plaintiff then filed the currently-operative Third Amended Complaint. ECF No. 92.

This motion, ECF No. 107, and the defendant's motion for summary judgment, ECF No. 108, followed. The Court granted the summary judgment motion in part, dismissing a First Amendment Claim, and denied it in part, leaving intact claims under the Fourth and Fourteenth Amendments as well as a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). ECF No. 131.

## ANALYSIS

In this case, the plaintiff retained experts Dr. Edward R. Maguire and Natasha Powers. ECF No. 107-1; ECF No. 107-3. The defendant challenges various portions of their reports.

Federal Rule of Evidence 702 governs the analysis:

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 590–91 (1993). "Rule 702 imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc*., 787 F.3d 1297, 1307 (10th Cir. 2015) (modification and citation omitted). When such opinions are challenged, "[t]he

proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). That burden is one of establishing that the admissibility requirements are met by a preponderance of the evidence. Fed. R. Evid. 702 advisory committee's note (2000 amendment).

To determine whether an expert opinion is admissible, a district court performs "a two-step analysis," first evaluating qualifications, then the reliability of a qualified expert's opinions. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022).

## I. Qualifications

First, the court determines whether the expert is "qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id*. at 1180 (quoting Fed. R. Evid. 702).

The defendant raises no serious challenge to either expert's qualifications, with good reason. Dr. Maguire is a Professor of Criminology and Criminal Justice at Arizona State University, the director of the university's Public Safety Innovation Lab, and a holder of a Ph.D. in criminal justice from the State University of New York at Albany. ECF No. 107-1 at ¶ 2. He has over twenty-five years of experience studying, training, and working with police. *Id.* He has testified at trial and in depositions as an expert multiple times. *Id.* ¶ 8. Ms. Powers was a police officer for fourteen years, has specialized training in crowd-control techniques, and holds various related certifications. ECF No. 107-3 at 1–3. Both experts are sufficiently qualified to opine on police practices.

## II. Reliability

At the second step, a court assesses the opinions of a qualified expert for reliability. *Roe*, 42 F.4th at 1180–81 (citations omitted); Fed. R. Evid. 702(b)–(d). To perform that function, a court "assess[es] the reasoning and methodology underlying the expert's opinion, and determine[s] whether it is both scientifically valid and applicable to a particular set of facts."

3

*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93). Where, as here, "[e]xpert testimony" is "based on experience alone," it "must reveal how the experience led to the expert's conclusion, why the experience is a 'sufficient basis for the opinion,' and how the experience was reliably applied." *United States v. Martinez*, 88 F.4th 1310, 1314 (10th Cir. 2023) (quoting *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014)). Establishing reliability does not require showing that the expert's testimony is indisputably correct, *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023); *see Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness), but "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Roe*, 42 F.4th at 1181 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

### A. Maguire Report

Dr. Maguire's report comes to two main conclusions. First, he concludes that the Denver Police Department ("DPD") was unprepared for the George Floyd protests, resulting in a haphazard response that did not follow DPD's written policies and ended up utilizing overly aggressive tactics. ECF No. 107-1 ¶¶ 164–165. Second, he concludes that DPD's policies and training were ineffective to teach officers best practices in how to handle crowd events, resulting in strategies being employed that increased, rather than decreased, the level of violence during the George Floyd protests. *Id.* ¶¶ 167–168. His overall opinion concludes that "the DPD's policies, training, strategies, and tactics led to the constitutional violations and injuries experienced by the Plaintiff and others during the GFP." *Id.* ¶ 169. The foundation for his conclusions begin with Dr. Maguire's review of crowd psychology, evidence-based frameworks

for best practices in handling crowd events, and recommendations of professional police organizations. *Id.* ¶¶ 23–48. He then compares the best practices he put forward with DPD training materials and actual DPD practices employed during the George Floyd protests to conclude that neither the training that DPD officers received nor the tactics they actually employed were consistent with the best practices he had earlier outlined. *Id.* ¶¶ 49–113. In addition, Dr. Maguire reviewed internal controls, such as the use of body-worn camera, submission of use-of-force reports, and internal discipline, and found that they were not deployed effectively enough to keep bad behavior at bay. *Id.* ¶¶ 114–140. He then conducted a review of the incident in which the plaintiff was struck with a projectile, finding it to be emblematic of the overall problems he had outlined with the DPD. *Id.* ¶¶ 141–163. Such methodology (with the exception of conclusions of legal violations) seems grounded in Dr. Maguire's experience and expertise, and the defendant does not contend otherwise.

Instead, the defendant takes scattershot aim at a number of commentaries and remarks Dr. Maguire makes en route to his main conclusions. ECF No. 107 at 11–12. The defendant simply offers unadorned labeling of the comments as "speculation," ECF No. 107 at 11, and the plaintiff's counter is a brief retort that they are "clearly unobjectionable." ECF No. 116 at 12.

When the parties paint with so broad a brush, there is little reason for the Court to fashion its ruling with a finer tip. Suffice it to say that "Rule 702 does not allow an expert witness to speculate as to the intent or state of mind of the parties." *Pinon Sun Condo. Ass'n v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *8 (D. Colo. Mar. 25, 2020). Thus, musing about the mindset that an officer might glean from a training course, ECF No. 107-1 ¶¶ 58–60, or about how linguistic choices describing less-lethal weapons might affect an officer's psyche, *id.* ¶ 66, falls out of the expert's purview, though this does not prevent him

from commenting on the shortcomings of the course or word choices more generally. Others are more rooted in Dr. Maguire's contrasting his crowd management standards against the DPD's practices, *see id.* ¶¶ 92, 93, 118, 125, 127, and while they do not rise to the level of "absolute certainty," no such lofty standards are necessary for him to opine. *Goebel*, 346 F.3d at 991. The defendant does not explain its objection to these paragraphs further and the more common characteristic amongst the cited paragraphs, rather than speculation, appears to be their disparaging prose. *See* ECF No. 107 at 11–12; *see* ECF No. 107-1 ¶¶ 89–90 ("tantamount to having no policy"), 118 ("overly casual"), 125 ("serious management failure"), 127 ("chaotic"). To that end, at trial, Dr. Maguire may testify to the underlying analysis that led him to those conclusions, but he will not be permitted simply to take swipes at the defendant's practices. Finally, there is little for the jury to gain from Dr. Maguire mentioning that another non-noticed expert, Chief Stamper, was correct in his conclusions. ECF No. 107-1 ¶ 118. That conclusion is therefore excluded.

In the same vein, to the extent Dr. Maguire takes aim at an individual's "credibility," *id.* ¶ 120, deems a statement "clearly inaccurate," *id.* ¶ 129, or questions another expert's "neutrality," ECF No. 107-2 ¶ 5, "the credibility of another is not an appropriate subject for expert opinion testimony." *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014). After all, "jury members do not need an expert to inform them whether one statement contradicts another or whether a statement contradicts video evidence." *McCullon v. Parry*, No. 18-CV-00469-NYW, 2021 WL 4947237, at *7 (D. Colo. June 23, 2021) (citing *Hill*, 749 F.3d at 1261). To be sure, Dr. Maguire may testify how his understanding of the facts differs from any witnesses the defendant provides. *See id.* at *7. But jurors do not need an expert to tell them who is telling the truth and who is not. That is their exclusive province. Nor does the jury need Dr. Maguire to pick

favorites amongst deponents, ECF No. 107-1 ¶ 86, or to tell them whether DPD takes its obligations "seriously" or not. *See Pinon Sun Condo. Ass'n*, 2020 WL 1452166, at *8.

The defendant also contends that Dr. Maguire's report states legal conclusions. To the extent Dr. Maguire intends to testify that the defendant violated the Constitution, *see* ECF No. 107-1 ¶¶ 76, 154, 155, 158, 159, 167, 169, that is not his role. To be sure, an expert's opinion is not excluded simply because it touches on an ultimate issue of law. *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (en banc). But an expert may not offer opinions that direct the jury on what conclusion to reach. *Id.*; *see United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) ("[A]n expert may not simply tell the jury what result it should reach[.]"). Thus, Dr. Maguire may testify, based on his experience and education, that DPD practices were inconsistent with best practices, but "may not testify that" the "use of force" or the policies and practices surrounding the use of force were "unreasonable under the law." *Huff v. City of Aurora*, No. 21-CV-02715-RMR-NRN, 2024 WL 1141492, at *6 (D. Colo. Mar. 15, 2024).

Finally, the defendant seeks to exclude Dr. Maguire's opinions indicating that DPD's conduct in May 2020 are emblematic of an unwritten policy or widespread practice. ECF No. 107 at 6–8. The nature of the challenge is unclear; the thrust of the argument appears to be that Dr. Maguire's opinion alone, which focuses on the events of May 2020, cannot prove that DPD then had a custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law" so as to satisfy *Monell* liability. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 168–69 (1970)). That very well may be; indeed, the Court's ruling denying summary judgment did not rely on Dr. Maguire's testimony but instead on evidence the plaintiff adduced that excessive force was customarily used at events going back to 2008 and on testimony that nothing had changed in crowd control

management since that time. But that is no reason to exclude Dr. Maguire's opinion as to the practices he observed in May of 2020. To be sure, Dr. Maguire may not opine that his observation of those practices satisfies *Monell*; that is, he may not opine that anything he observed was "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation modified). But the prohibition against opining on the law does not prevent him from stating that the practice he observed did not accord with DPD's written policies; or from articulating, based on his experience with police practices, what differences he observed between the two and how commonly they were displayed amongst officers. That, in conjunction with other evidence the plaintiff introduces may or may not convince a jury that the practice was widespread enough to constitute a *Monell* custom, but the fact that Dr. Maguire's opinion cannot carry the plaintiff's burden alone to do so is no reason to exclude it.

In short, Dr. Maguire's expertise allows him to compare DPD's practices with the best practices he outlines. It does not allow him to opine on the mindset, credibility, or neutrality of individuals. And it does not allow him to tell the jury how to think about the law, including whether to deem DPD's May 2020 practices permanent or well-settled enough so as to constitute an official custom or policy. Opinions that fall into the latter categories will be excluded at trial.

### B. Powers Report

The defendant next attacks Powers's report. The report begins with a summary of Powers's police bona fides. ECF No. 107-3 at 1–3. It proceeds to explain the information she reviewed, *id.* at 4–12, provides a factual summary of the case, *id.* at 12–13, and explains both modern police practices and her methodology, which includes the application of model policing codes and her own familiarity with police practices. *Id.* at 13–15. Most of the report is dedicated

to a factual summary of the evidence in this case. *Id.* at 18–33. It then proceeds to discuss DPD procedures regarding PepperBalls (a less lethal measure) and the 40 mm projectiles employed in this case, *id.* at 33–36, as well as an inference of training deficiencies in the use of those devices, *id.* at 36–37. She then concludes that the force sued on the plaintiff was excessive, *id.* at 37–38, and that DPD's practices in employing body-worn camera and in writing use-of-force reports were unreasonable. *Id.* at 38. She also concludes that the "officers involved in this incident had a 'free for all' with the people" on May 30, 2020. *Id.* at 39.

The defendant first seeks to exclude Powers from opining that Denver police actions were not consistent with generally accepted police practices, ECF No. 107 at 13; *see* ECF No. 107-3 at 15, characterizing her conclusion as the mere "*ipse dixit* of the expert." *Medina-Copete*, 757 F.3d at 1101. That perception is somewhat understandable. Most of the content of Powers's report is unnecessary: a broad recounting of the evidence does little to explain her opinion and to connect her opinions with her expertise. And the report is written more like an affidavit in support of a search warrant than a traditional expert report; it front-loads all of Powers's expertise and the connective glue between that expertise and the facts at hand rather than distributing it throughout the report in a manner that is easy to understand. Nevertheless, its opinions are not only *ipse dixit*. As other courts have found specifically with respect to Powers's provision of expert testimony, "[a]s the Court understands the expert notice, she intends to form her opinion based on the application of her knowledge, training, and experience to the facts testified to by the investigators and the discovery she reviewed in the case." *United States v. Bash*, No. 1:20-CR-00238 JLT SKO, 2025 WL 51210, at *23 (E.D. Cal. Jan. 8, 2025); *see Huff*, 2024 WL 1141492, at *8. While the report could have omitted unnecessary factual detail and more explicitly connected Powers's experience with the conclusions it reaches, it explains, albeit

somewhat obliquely, that the shortfalls it finds are based on Powers's training and experience as a former police officer. The same is true of her opinions about the level of force used on protestors.

Having said that, the defendant is correct, ECF No. 107 at 15, that much of Powers's report is couched in language suggesting that she will testify as to whether the defendant (or the plaintiff) violated the law. That is not her role. As has been said before, "Powers may testify that, based on her training and experience, [officers'] use of force was inappropriate under prevailing standards in law enforcement, but may not testify that [officers'] use of force was unreasonable under the law." *Huff*, 2024 WL 1141492, at *6. Likewise, Powers may testify about whether the defendant's standards are consistent with prevailing law-enforcement standards, but not that any of those standards are constitutionally or legally insufficient. That is the jury's call, not hers. Rather than weighing in on particular cited opinions — because, again, the parties analyze them only at a high level of generality — the Court simply notes that it will permit opinions that fit those parameters and exclude those that do not.

### III. Relevance

Following a determination of liability, "in fulfilling its *Daubert* obligations a trial court must also conduct a further inquiry into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 597). The defendant contends several of the experts' opinions are not. ECF No. 107 at 4. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Daubert*, 509 U.S. at 587 (quoting Fed. R. Evid. 401). It follows, then, that "[r]elevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual

dispute." *United States v. Garcia*, 635 F.3d 472, 477 (10th Cir. 2011) (internal quotations
omitted).

"The Supreme Court has described the consideration of relevant evidence as one of 'fit,'"
*Bitler*, 400 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 591), and here, the plaintiff's theory of fit
relies primarily upon their *Monell* claim. To establish municipal liability under *Monell*, the
plaintiff must show (1) an official policy or custom, (2) causation, and (3) deliberate
indifference. *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023)
(citing *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020)). Amongst the
plaintiff's theory of official policy or custom here is that DPD in May 2020 had "an informal
custom amounting to a widespread practice that, although not authorized by written law or
express municipal policy, is so permanent and well settled as to constitute a custom or usage
with the force of law." *Bryson*, 627 F.3d at 788 (citation modified). In particular, as the Court
found on the motion for summary judgment, the plaintiff's theory is that DPD had a longstanding
custom of using disproportionate force against peaceful protestors, amplified by a lack of clear
guidelines on body-worn camera use, the minimal writing of use-of-force reports, and a lack of
discipline for employing such force.

The plaintiff contends that their expert testimony is relevant on that theory. The
defendant contends it is not. Often, though, making a relevance determination is more
appropriate in the context of trial rather than on a pretrial motion. *See Cruz v. City & Cnty. of
Denver*, No. 21-CV-03388-KAS, 2023 WL 8715698, at *4 (D. Colo. Dec. 8, 2023). This case
illustrates the futility of making relevance determinations at this juncture.

The defendant asserts, for instance, that expert opinions regarding the Denver Police
Department's failure to discipline, supervise, or enact other internal controls to stem office

misconduct are irrelevant because they are based on actions that occurred during or after the George Floyd protests. ECF No. 107 at 4–5, 9–10. That may be, if those are the only failures that the plaintiff adduces at trial, since "basic princip[le]s of linear time prevent" causality going from future to past. *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). But if the plaintiff adduces evidence of a longstanding practice of non-discipline for excessive force, the experts' opinions about the lack of discipline become simply the latest example in a series of examples illustrating the custom of non-discipline emboldening excessive force. *See* ECF No. 107-1 ¶ 102; ECF No. 107-3 at 40. At this point, it is simply unknown which situation will arise.

Likewise, the dismissal of the plaintiff's failure-to-train claim may mean that "opinions regarding the adequacy of" DPD's "training are no longer relevant and are therefore inadmissible." *Johnson v. City of San Jose*, No. 21-CV-01849-BLF, 2023 WL 8852489, at *3 (N.D. Cal. Dec. 21, 2023). But if the defendant, for instance, defends the *Monell* claim by indicating that it has changed its policies since its handling of 2008 or 2011 events, the lack of training on new policies could become relevant in establishing that the actual unwritten policy of allowing excessive force still remained.

Finally, the defendant seeks to exclude experts' opinions regarding crowd-control techniques other than the 40 mm projectile launcher, *see* ECF No. 107-1 ¶¶ 104–106, 108, 158, 163, ECF No. 107-2 at ¶¶ 8–9, and ECF No.107-3 at 34, 34, 36. ECF No. 107 at 5. To be sure, such evidence may very well end up being irrelevant at trial. *See Cruz*, 2023 WL 8715698, at *6. After all, the plaintiff does not assert that the police pushed him into an active intersection, or that police used rubber ball grenades, flash-bangs, sting-ball grenades, or PepperBalls against him, that police used kettling tactics to prevent him from leaving, or that the defendant's mutual aid partners used force against him. And without evidence that use of these tactics was part of an

informal custom or practice of the DPD, opinions on these topics could certainly be, if not wholly irrelevant, more prejudicial than probative. *See* Fed. R. Evid. 403. But at this point, it is unclear how the plaintiff intends to present his *Monell* claim and, without more context, the Court declines to exclude these opinions at this point on relevance grounds.

## **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that the defendant's Motion to Exclude Expert Testimony Provided by Edward R. Maguire and Natasha Powers Pursuant to Fed. R. Evid. 702, ECF No. 107, is **GRANTED IN PART** and **DENIED IN PART**. The defendant may renew its relevance objections closer to trial.

DATED this 30th day of September, 2025, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge